Charles M. Tebbutt, OR Bar No. 96579, *pro hac vice forthcoming*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
charlie@tebbuttlaw.com

Daniel C. Snyder, OR Bar No. 105127, *pro hac vice forthcoming*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
dsnyder@publicjustice.net

Bryan Hurlbutt, ID Bar No. 8501
ADVOCATES FOR THE WEST
PO Box 1612
Boise, ID 83701
Ph: (208) 342-7024
bhurlbutt@advocateswest.org

*Attorneys for Plaintiff Snake River Waterkeeper*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| SNAKE RIVER WATERKEEPER, an Idaho non-profit corporation,<br><br>       Plaintiff,<br>v.<br><br>J.R. SIMPLOT COMPANY, a Nevada corporation; and SIMPLOT LIVESTOCK CO., a Nevada corporation,<br><br>       Defendants. | Case No. 1:23-cv-239<br><br>**COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND CIVIL PENALTIES** |

## INTRODUCTION

1.   The middle Snake River in Southern Idaho has been abused by industrialized

agriculture for decades. In particular, manure pollution from intensive animal feeding operations

COMPLAINT – 1

fouls the water with excessive nutrients and dangerous pathogens like E. coli, making the river unsuitable for recreational activities and inhospitable to aquatic life. Fueled by massive nutrient pollution from upstream agriculture, Snake River reservoirs experience seasonal toxic algal blooms, rendering the river unsafe to touch and triggering health warnings from Idaho officials.

2. The Grand View Feedlot, which is owned and operated by Defendants J.R. Simplot Company and Simplot Livestock Co. (collectively, "Defendants"), is the largest confined animal feeding operation in Idaho—and one of the largest in the United States—with a one-time capacity of 150,000 head of cattle. Located in the Snake River canyon south of Boise and west of Mountain Home near the Ted Trueblood Wildlife Management Area and the town of Grand View, Idaho, the Grand View Feedlot generates at least 47,450 tons of manure every year, according to Defendants' estimates in 2008.

3. As detailed below, Defendants have failed and continue to fail to properly manage manure at the Grand View Feedlot. Among other problems, Defendants are unable to control rain and snowmelt that flows onto the Feedlot, Defendants overapply manure to nearby fields, and Defendants fail to otherwise adequately collect, contain, and dispose of manure. As a result, manure and manure-laden water from the Grand View Feedlot course through streams, canals, and ditches and flow into the nearby Snake River.

4. Plaintiff Snake River Waterkeeper ("SRW") brings this citizen suit against Defendants for violations of the Federal Water Pollution Control Act, also known as the Clean Water Act, 33 U.S.C. § 1251 *et seq*. (the "Clean Water Act"), for their past and continuing violations of the Clean Water Act by discharging pollutants from the Grand View Feedlot to the mid-Snake River, a water of the United States, without a permit, in violation of §301(a) of the Clean Water Act, 33 U.S.C. § 1311(a). Defendants previously had a Clean Water Act permit, but

they let it expire in 2012 and never sought a new permit. Defendants' unpermitted discharges of nitrogen, phosphorus, E. coli, fecal coliform, suspended solids, and other pollutants have caused and/or contributed to violations of Idaho's water quality standards, putting the Snake River's health in jeopardy.

5. SRW seeks declaratory relief establishing that Defendants are in violation of the Clean Water Act. SRW also seeks injunctive relief directing Defendants to halt any and all continuing discharges unless and until Defendants obtain and comply with the terms of a valid Clean Water Act permit. In addition, SRW seeks the imposition of civil penalties of up to $64,618 per violation, per day. Finally, SRW requests that the Court award SRW's reasonable attorneys' fees and litigation costs incurred in bringing this action, along with any other relief that this Court deems appropriate.

## JURISDICTION

6. This is a civil enforcement action brought under the citizen suit provisions of Section 505 of the Clean Water Act, 33 U.S.C. § 1365. This Court has subject matter jurisdiction pursuant to 33 U.S.C. § 1365(a).

7. The Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Clean Water Act and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

8. The relief requested is authorized pursuant to 33 U.S.C. §§ 1319 and 1365(a), and 28 U.S.C. §§ 2201 and 2202.

9. On January 30, 2023, SRW gave notice of the alleged violations and its intent to file suit to Defendants, Defendants' registered agent, the United States Environmental Protection Agency ("EPA"), EPA Region 10, and the Idaho Department of Environmental Quality, as

required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b), and the implementing regulations at 40 C.F.R. § 135.2. A true and correct copy of SRW's notice letter (the "Notice Letter") is attached hereto as Attachment 1 and incorporated by reference.

10. More than sixty days have passed since SRW notified Defendants of the allegations against them, and, upon information and belief, the violations complained of in the Notice Letter are continuing at this time and are reasonably likely to continue.

11. No government authority is diligently prosecuting an administrative, civil, or criminal action in any state or federal court against Defendants for the unlawful discharges addressed in this Complaint.

## VENUE

12. Venue properly vests in the U.S. District Court for the District of Idaho pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the source of the alleged violations, the Grand View Feedlot (as defined below), is located in Elmore County, Idaho, within this judicial district.

## PARTIES

13. Plaintiff SRW is a not-for-profit corporation founded in 2014 under the laws of the State of Idaho and a registered 501(c)(3) public charity with the United States Internal Revenue Service.

14. SRW is dedicated to protecting and improving the Snake River and its surrounding communities and ensuring swimmable and drinkable water for all. SRW's approach combines sound science, policy advocacy, grassroots community engagement, and education to stand up for clean water together as a community, ensuring a clean and vibrant future for the Snake River and its surrounding communities. To further its mission, SRW actively seeks federal

and state implementation of environmental laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

15. SRW has members who live, work, and recreate in proximity of the Snake River. These members also make use of the Snake River and waterways and natural areas in proximity to it for recreational, aesthetic, and related purposes. These members' aesthetic, recreational, and other interests are injured by Defendants' violations of the Clean Water Act.

16. In addition, SRW's organizational purposes are adversely affected by Defendants' violations of the Clean Water Act. Defendants' violations have caused significant contamination of area surface waters and the environment.

17. SRW is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

18. Defendants are corporations organized under the laws of the State of Nevada and registered foreign corporations under the laws of the State of Idaho. Defendants both have an Idaho mailing address of P.O. Box 27, Boise, ID 83707.

19. Defendants own and operate the confined cow feedlot known as the Simplot Grand View Feedlot, located at or near 1301 Hwy 67, Grand View, ID 83624.

20. The Grand View Feedlot is a concentrated animal feeding operation, or CAFO, as defined by the Clean Water Act, 40 C.F.R. § 122.23(b)(2), and it is specifically considered a "large CAFO" because it confines, stables, feeds, and maintains more than 1,000 cattle for a total of forty-five days or more in any twelve-month period. 40 C.F.R. §§ 122.23(b)(1), (b)(4)(iii).

21. Each Defendant is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

22. The objective of the Clean Water Act is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Congressional intent was that the discharge of pollutants into the Nation's navigable waters be eliminated by 1985. *Id*.

23. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into navigable waters, unless the discharge complies with other enumerated sections of the Clean Water Act. Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a valid National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

24. Section 402 of the Clean Water Act establishes the NPDES program, which is the primary means of controlling discharges from CAFOs (as defined below). That Section enables each State to administer its own permit program upon application approval by the EPA. 33 U.S.C. § 1342(b)–(c).

25. The "discharge of a pollutant" means any "addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). "Pollutant" is defined to include "industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

26. "The term 'point source' means any discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, landfill leachate collection system . . . from which pollutants are or may be discharged." 33 U.S.C. § 1362(14); 40 C.F.R. § 122.2. By its terms, a concentrated animal feeding operation ("CAFO"), such as the Grand View Feedlot, is a statutorily-defined point source.

27. Applicable federal regulations define two primary parts of a CAFO: the "production area" and the "land application area." The "production area" includes:

> the animal confinement area, the manure storage area, the raw materials storage area, and the waste containment areas. The animal confinement area includes but is not limited to open lots, housed lots, feedlots, confinement houses, stall barns, free stall barns, milkrooms, milking centers, cowyards, barnyards, medication pens, walkers, animal walkways, and stables. The manure storage area includes but is not limited to lagoons, runoff ponds, storage sheds, stockpiles, under house or pit storages, liquid impoundments, static piles, and composting piles. The raw materials storage area includes but is not limited to feed silos, silage bunkers, and bedding materials. The waste containment area includes but is not limited to settling basins, and areas within berms and diversions which separate uncontaminated storm water.

40 C.F.R. § 122.23(b)(8). The "land application area" means "land under the control of a[] [C]AFO owner or operator, whether it is owned, rented, or leased, to which manure, litter or process wastewater from the production area is or may be applied." *Id.* § 122.23(b)(3).

28. Discharges from either the production area or land application area are prohibited unless a facility first obtains an NPDES permit. *Id.* § 122.23(d)(1).

29. The Clean Water Act exempts from the definition of "point source" "agricultural stormwater discharges and return flows from irrigated agriculture." 33 U.S.C. § 1362(14). The EPA has interpreted the exemption for "agricultural stormwater discharges" as exempting discharges caused exclusively by precipitation from agricultural fields, but only where the application of manure or process wastewater to those fields has been accomplished in accordance with site-specific nutrient management practices that ensure the appropriate agricultural utilization of nutrients, consistent with 40 C.F.R. § 122.42(e)(1)(vi)–(ix).

30. On June 5, 2018, the EPA delegated the administration of NPDES permitting in Idaho to the Idaho Department of Environmental Quality ("DEQ"). *See* IPDES Approval Letter, EPA (June 5, 2018), https://www.epa.gov/sites/default/files/2018-06/documents/ipdes-program-

approval-letter-06052018.pdf. The EPA scheduled the DEQ to begin processing different types of permits in stages, with CAFO permit processing beginning July 1, 2020. *Id.* p. 2. The Idaho Code also authorizes the DEQ to implement an Idaho Pollutant Discharge Elimination System ("IPDES") permit program that complies with the Clean Water Act. Idaho Code §§ 39-175A-C.

31. The DEQ's administrative rules, in turn, provide that "[a]ny person who discharges or proposes to discharge a pollutant from any point source into waters of the United States . . . and who does not have an IPDES or NPDES permit in effect, shall submit a complete IPDES permit application to the [DEQ]." Idaho Administrative Procedures Act ("IDAPA") 58.01.25.102.01. Applicants may obtain coverage through either an Individual IPDES permit or a General IPDES permit. IDAPA 58.01.25.105; 58.01.25.130. In addition, "[t]he [DEQ] will not issue an IPDES permit for a discharge . . . [u]nless the conditions of the permit provide for compliance with the applicable requirements of IDAPA 58.01.02, 'Water Quality Standards.'" IDAPA 58.01.25.103.

32. The Clean Water Act authorizes citizens to file suit against any person alleged to be in violation of an effluent standard or limitation. 33 U.S.C. § 1365(a)(1). An effluent standard or limitation includes "an unlawful act under subsection (a) of section 1311 of this title[.]" 33 U.S.C. § 1365(f).

**FACTS**

*Defendants' Operations*

33. The Grand View Feedlot encompasses, at the very least, Elmore County, Idaho Parcel Nos. RP04S03E340040, RP04S03E276610, RP04S03E278410, RP04S03E274810, RP04S03E, RP04S03E255010, RP04S03E352410, RP04S03E359010, RP05S03E010610, RP05S03E021350, RP05S03E023050; other parcels used for the Grand View Feedlot's

operations by Defendants are also subject to this Complaint. *See also* Exhibit A to the Notice Letter.

34. The Grand View Feedlot was issued NPDES Permit Number IDG010026, which became effective on April 3, 1997. That permit was administratively extended on January 7, 2002. On December 18, 2012, the EPA informed Defendant J.R. Simplot Company that because it had not timely submitted a new Notice of Intent and a Nutrient Management Plan to receive coverage under the EPA Region 10's NPDES General Permit, any discharges from the Grand View Feedlot would be unauthorized and would fail to comply with Section 301 of the Clean Water Act.

35. Defendants never subsequently obtained an NPDES nor IPDES permit for the Grand View Feedlot.

*Defendants' Unpermitted Discharges*

36. Because Defendants do not have an NPDES nor IPDES permit for the Grand View Feedlot, and have not had a permit for over a decade, each and every discharge for the last five years and sixty days is a violation of the Clean Water Act.

37. Defendants have discharged and continue to discharge animal wastes, including liquid and solid manure and process wastewater, from the Grand View Feedlot and other related point sources under Defendants' control, into waters of the United States, including into tributaries, ditches, and drainage canals that flow into the Snake River, and into the Snake River itself.

38. The pollutants that have been, are being, and will continue to be discharged include facility wastewater, process wastewater, washwater, liquid and solid animal manure and

wastes, debris, sediment, and chemicals such as hormones and antibiotics routinely used at the Grand View Feedlot.

39.     The animal waste being discharged contains, among other pathogens and pollutants, fecal coliform and E. coli bacteria, nitrogen, phosphorus, and suspended solids, all of which pollute the Snake River.

40.     The Snake River, as well as the tributaries, ditches, and drainage canals that flow into the Snake River, including the Middle Line Canal, Low Line Canal, Jack Creek, and Corder Creek, are "waters of the United States" within the scope of the Clean Water Act.

41.     In the alternative, the ditches and drainage canals that flow into the Snake River from the Grand View Feedlot are themselves "discernable, confined and discrete conveyance[s]" and are thus point sources under the Clean Water Act.

42.     Upon information and belief, Defendants' improper manure and process wastewater management, lack of clean water diversions, and improper operational practices have caused and continue to cause unpermitted discharges of liquid and solid animal waste and process wastewater from the Grand View Feedlot's production areas to waters of the United States.

43.     Precipitation that runs onto the Grand View Feedlot mingles with and becomes contaminated by large quantities of animal waste, feed, sediment, and other pollutants.

44.     Based on aerial and satellite imagery, and Defendants' own admissions as discussed below, Defendants have not installed diversion structures, adequate wastewater containment structures, or alternative conservation measures such as wastewater treatment facilities to control and detain all precipitation falling on the Grand View Feedlot site and any related stormwater entering the site.

45. The contaminated water then discharges to the Snake River via tributaries such as the Middle Line Canal, Low Line Canal, Jack Creek, Corder Creek, and other tributaries and conduits.

46. Based on information discovered by SRW, SRW prepared a flow map of the Snake River and the conduits that transport and discharge the Grand View Feedlot's pollutants. Notice Letter, Exhibit B. SRW also prepared a map depicting the parcel ownership by the Simplot entities, including assumed business name Grand View Farms. *Id.* Exhibit A.

47. Upon information and belief, the production area of the Grand View Feedlot is not designed nor operated in a manner that could contain a 25-year, 24-hour rainfall event, nor is it operated in accordance with certain measurements and record-keeping requirements, in violation of 40 C.F.R. § 412.31(a)(1)(i)–(ii).

48. As the aerial images below depict, Defendants do not divert clean water from the production area at the Grand View Feedlot:



North Perimeter of Grand View Feedlot | East Perimeter of Grand View Feedlot

49. Defendants admit they are unable to control, divert, or detain the precipitation falling onto and entering the Grand View Feedlot. On December 9, 2019, Defendants submitted comments to the EPA on its proposed reissuance of the Clean Water Act general permit for CAFOs in Idaho. In those comments, Defendants stated:

> Permit Condition 2.c. requires clean water to be diverted from the production area or requires the facility provide adequate wastewater or manure storage capacity at the facility to contain clean water. It is difficult and costly to divert run on water from adjacent properties.
>
> As an example, at the Simplot operation near Grand View, Idaho, the topography north and east of the facility consists of steep rising terrain to a desert plain above the Snake River. The land bordering the Simplot operation is owned by the federal government and is managed by the U.S. Bureau of Land Management (BLM). This plain reaches elevations above 2,900 feet and drains to the Snake River valley below through a series of "draws". Building diversion structures to totally divert this water is not appropriate or feasible. In fact, to do so would require a number of such structures to be built on federal lands. If such structures were allowed by rules, such a project would go through a number of regulatory processes such as the National Environmental Policy Act (NEPA). Thus, this would be very cumbersome process with an uncertain outcome.
>
> It is also not feasible to contain run on water at Simplot's Grand View property due to the enormous volume of run on water from thousands of acres of BLM land up-gradient of the facility. Therefore, Simplot recommends Permit Condition 2.c. be removed from the draft 2019 NPDES General Permit for CAFOs in Idaho.

50. The Grand View Feedlot does not divert nor detain clean water, nor does it adequately treat water that has become contaminated on its property. Instead, this contaminated water discharges from the site to the Snake River, as described herein.

51. According to public assessor data, excluding barren land owned by the United States government, Defendants are the owner of the developed, upgradient property to the Grand View Feedlot, which includes agricultural fields. *See* Exhibit A to the Notice Letter (ownership map).

52. Other operational practices at the Grand View Feedlot have caused, are causing, and are reasonably likely to continue causing unpermitted discharges in violation of the Clean Water Act.

53. Defendants own and operate Grandview Farms, an assumed business name for Defendant J.R. Simplot Co. per public records.

54. Manure generated at the Grand View Feedlot is transported and applied by Defendants, inclusive of their agents and contractors, to agricultural fields owned and operated by Grandview Farms.

55. The agricultural fields owned and operated by Grandview Farms are part of the Grand View Feedlot CAFO.

56. Defendants control the land application areas to which manure generated at the Grand View Feedlot has been and is applied.

57. Upon information and belief, Defendants apply manure to their fields in quantities, and at rates and times, that are not compliant with the nutrient management plans of the Grand View Feedlot and/or Grandview Farms. As a result, Defendants' land application of manure causes manure pollutants to discharge through pipes, culverts, drains, and other conduits into the irrigation ditches and canals that are tributaries to the Snake River, as depicted below:




58. SRW has undertaken water quality sampling from public access points on public lands surrounding Defendants' property, Grandview Farms, and the Grand View Feedlot. Samples have been obtained from the locations depicted on the map and described below.



59.     Sampling location "BL" corresponds with the Grand View, Idaho Public Boat Launch on the Snake River. This represents an "upstream" sampling location from Grand View Feedlot's discharges into the Snake River.

60.     Sampling locations "BR1," "BR2," and "BR3" correspond to roadside access points within the county right of way on Bennet Road. Samples are from a ditch-like conveyance along the road.

61.     Sampling locations "SR1" and "SR2" correspond to roadside access points within the county right of way on Shaw Road. Samples are from a canal, ditch, or other conveyance.


62. Sampling locations "TD" and "TPD" corresponds to public access points at the Trueblood Wildlife Area. Samples at TD are from a stream, ditch, or other conveyance, and at TPD are from a piped discharge point.

63. Sampling location "SPG" corresponds to "Snake below Grand View," a public access sampling location on the Snake River. This represents a "downstream" sampling location from Grand View Feedlot's discharges on the Snake River.

64. SRW's water quality sampling of the water in these locations demonstrates the continuous and ongoing nature of Defendants' unlawful discharges. Samples taken from conduits into which Grand View Feedlot and Grandview Farms discharge, as well as from the Snake River discharge points, show consistently high levels of total coliform and E. coli, both indicators of pollution from cattle manure. Samples further show the existence of nitrogen and phosphorus compounds consistent with cattle manure. The chart attached as Exhibit C to the Notice Letter shows the dates and sampling results of SRW's water quality sampling.

65. By contrast, samples taken from upstream locations from Defendants' discharges show upstream samples that are below or at 100 CFU of E. coli per 100 mL.

66. SRW's sampling demonstrates that unlawful discharges occurred on, or in very close temporal proximity to, the dates samples were taken: June 11, 2017; June 12, 2017; August 25, 2017; May 5, 2022; June 28, 2022; September 29, 2022; September 30, 2022; October 3, 2022; October 4, 2022; October 5, 2022; October 6, 2022; and October 7, 2022. The breadth of the sampling data—data taken nearly five years apart—demonstrates that discharges from Grand View Feedlot are ongoing and continuous, and have occurred each day for at least the past five years and sixty days.

//

*Defendants' Violation of Idaho's Water Quality Standards*

67. The sampling data also show that discharges from the Grand View Feedlot are causing or contributing to violations of Idaho's water quality standards.

68. Under Idaho rules, "No pollutant shall be discharged from a single source or in combination with pollutants discharged from other sources in concentrations or in a manner that: (a) Will or can be expected to result in violation of the water quality standards applicable to the receiving water body or downstream waters; or (b) will injure designated or existing beneficial uses; or (c) is not authorized by the appropriate authorizing agency for those discharges that require authorization." IDAPA 58.01.02.080.01.

69. The section of the Snake River to which the Grand View Feedlot discharges is identified as the "Middle Snake-Succor Subbasin" subdivision, specifically "SW-6, Snake River: C.J. Strike Dam to river mile 425 (T02N, R04W, Sec. 2)." *See* IDAPA 58.01.02.140.03. The designated uses for this section are "cold water" for aquatic life, primary contact recreation, and drinking water supply.

70. Pursuant to the primary contact recreation use, "Waters designated for recreation must meet criteria for indicator bacteria of fecal contamination[,]" which is measured through E. coli sampling.

71. SRW's E. coli sampling of the Snake River has shown high E. coli results in waters that are downstream from Grand View Feedlot's discharges. For instance, SRW's sampling shows upstream samples that are below or at 100 CFU of E. coli per 100 mL. Three results downstream, however, show E. coli results above the 126 CFU/100 mL water quality standard set forth in Idaho regulations. Therefore, the Grand View Feedlot is causing or

contributing to violations of the primary contact recreation standard for this particular section of the Snake River.

72. In addition, the Grand View Feedlot's discharges have violated the general water quality standards for the Snake River, specifically the "Excess Nutrients" criteria at IDAPA 58.01.02.200.06 ("Surface waters of the state shall be free from excess nutrients that can cause visible slime growths or other nuisance aquatic growths impairing designated beneficial uses."). SRW has observed visible slime growth and other nuisance aquatic growths at the Snake River discharge locations at the Trueblood Wildlife Area. This growth interferes with and injures the designated beneficial uses for this section of the Snake River, including primary contact recreation and drinking water supply designations. SRW's sampling shows excess nutrients being discharged from Grand View Feedlot to the Snake River, such as multiple nitrogen compounds and orthophosphate, which are attributable to animal manure.

## CLAIM FOR RELIEF

### Discharge of Pollutants
### Without an NPDES or IPDES Permit

73. SRW incorporates the allegations contained in the above paragraphs as though fully set forth herein.

74. Section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to waters of the United States by any person unless such discharges are approved pursuant to the terms of a valid permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.

75. Defendants are each a "person" under the Clean Water Act because they are corporations. 33 U.S.C. § 1362(5).

76. The manure, facility wastewater, process wastewater, washwater, liquid and solid animal manure and wastes, debris, sediment, and chemicals such as hormones and antibiotics that are discharged by Defendants are "pollutants" under the Clean Water Act, 33 U.S.C. § 1362(6).

77. The Snake River is a navigable water subject to the jurisdiction of the Clean Water Act.

78. The Middle Line Canal, Low Line Canal, Jack Creek, Corder Creek, and other tributaries and conduits are all "waters of the United States" subject to the jurisdiction of the Clean Water Act and IDAPA 58.01.25.

79. In the alternative, the Middle Line Canal, Low Line Canal, Jack Creek, Corder Creek, and other canals, tributaries, and conduits are themselves point sources from which manure pollutants are discharged by Defendants.

80. For at least the last five years and sixty days, Defendants have discharged and continue to discharge pollutants into waters of the United States from the Grand View Feedlot, inclusive of Grandview Farms.

81. Defendants do not have, and have not had within the last five years and sixty days, any valid NPDES nor IPDES permit authorizing discharges into such waterways from the Grand View Feedlot.

82. Each discharge Defendants committed for the last five years and sixty days is a separate and distinct violation of the Clean Water Act and is subject to a civil penalty.

83. In discharging manure and process wastewater without a permit into waters of the United States, including the Snake River and its tributaries, Defendants have violated and continue to violate section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

**RELIEF REQUESTED**

WHEREFORE, SRW respectfully requests that the Court enter a judgment:

A. Declaring that Defendants have violated and continue to be in violation of Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for the unlawful discharges of pollutants from the Grand View Feedlot to waters of the United States;

B. Enjoining Defendants from discharging pollutants from the Grand View Feedlot into waters of the United States except as authorized by and in compliance with a valid Clean Water Act permit;

C. Ordering Defendants to pay civil penalties of up to $64,618 per day, per violation, for all violations of the Clean Water Act at the Grand View Feedlot, pursuant to Sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. §§ 19.1–19.4;

D. Ordering Defendants to remediate any harm caused by Defendants' noncompliance with the Clean Water Act and to eliminate any potential for future harm;

E. Ordering Defendants to pay SRW's reasonable attorneys' fees, expert witness fees, and costs incurred in prosecuting this action pursuant to 33 U.S.C. § 1365(d); and

F. Awarding any such other relief as the Court may deem just and proper.

Dated: May 9, 2023.            Respectfully submitted,

/s/ *Charles M. Tebbutt*
Charles M. Tebbutt, *pro hac vice forthcoming*
Law Offices of Charles M. Tebbutt, P.C.
941 Lawrence St.
Eugene, OR 97401
Tel: (541) 344-3505
charlie@tebbuttlaw.com

/s/ *Daniel C. Snyder*
Daniel C. Snyder, *pro hac vice forthcoming*
PUBLIC JUSTICE
1620 L Street NW, Suite 630
Washington, DC 20036
Ph: (202) 797-8600
dsnyder@publicjustice.net

/s/ *Bryan Hurlbutt*
Bryan Hurlbutt, ID Bar No. 8501
Advocates for the West
PO Box 1612
Boise, ID 83701
(208) 342-7024
bhurlbutt@advocateswest.org

*Attorneys for Plaintiff Snake River Waterkeeper*